```
 1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEBRASKA
 2

 3    UNITED STATES OF AMERICA,    )      4:18CR3029
                                   )
 4              Plaintiff,         )
                                   )
 5    vs.                          )
                                   )
 6    JOSHUA DOUGLAS BORNEMEIER,    )
                                   )      Lincoln, Nebraska
 7              Defendant.         )      October 4, 2018

 8

 9

10                 TRANSCRIPT OF PLEA PROCEEDINGS
                 BEFORE THE HONORABLE CHERYL R. ZWART
11                 UNITED STATES MAGISTRATE JUDGE

12

13                     A-P-P-E-A-R-A-N-C-E-S

14    FOR THE PLAINTIFF:        Ms. Sara E. Fullerton
                                Assistant United States Attorney
15                              100 Centennial Mall North
                                Suite 487, Federal Building
16                              Lincoln, NE 68508-3865

17

      FOR THE DEFENDANT:        Mr. Jonathan M. Braaten
18                              Anderson, Creager and Wittstruck,
                                  P.C., L.L.O.
19                              1630 K Street
                                Lincoln, NE 68508
20

21    TRANSCRIBER:             Ms. Rogene S. Schroder, RDR, CRR
                                111 South 18th Plaza
22                              Suite 3129
                                Omaha, NE 68102
23                              (402) 661-7383

24

      Proceedings recorded by electronic sound recording, transcript
25    produced with computer.
```

1          (At 10:02 a.m. on October 4, 2018; with counsel and the

2     defendant present:)

3                COURTROOM DEPUTY:  We're on the record.

4                THE COURT:  We're on the record in Case Number

5     4:18CR3029, United States of America versus Joshua Douglas

6     Bornemeier.

7          Counsel, please enter your appearance.

8                MS. FULLERTON:  Your Honor, I'm Assistant United

9     States Attorney Sara Fullerton representing the government.

10               MR. BRAATEN:  Jon Braaten for Mr. Bornemeier.

11               THE COURT:  Mr. Bornemeier, you're here today because

12    I've been told that you want to enter a plea of guilty.  Is

13    that true?

14               THE DEFENDANT:  Yes, ma'am.

15               THE COURT:  I need to explain to you, sir, that I am

16    not your sentencing judge and I'm not the judge who will

17    determine whether your guilty plea is accepted and whether your

18    plea agreement is accepted.  Those matters will be taken up by

19    Judge Gerrard, who is your sentencing judge, but what I can do

20    for you today is gather some information from you and make a

21    recommendation to Judge Gerrard on those issues.

22         Do you agree to proceed before me?

23               THE DEFENDANT:  Yes, ma'am.

24               THE COURT:  Please raise your right hand.

25         (Defendant sworn.)

1          THE COURT:  You're now under oath, you've sworn to

2    tell the truth which means if you lie during this proceeding,

3    you can be separately prosecuted for the crime of perjury.

4        Do you understand that?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  At this time I'm going to have

7    Ms. Fullerton remind you of the charge to which you intend to

8    plead guilty and the possible penalty for that charge.

9        Ms. Fullerton.

10         MS. FULLERTON:  Yes, Your Honor.

11       Mr. Bornemeier, Count I alleges in substance that

12   beginning on or about July 1, 2017, and continuing to on or

13   about February 2nd, 2018, in the District of Nebraska, you were

14   involved in a conspiracy to distribute and possess with the

15   intent to distribute 50 grams or more of a mixture or substance

16   containing a detectable amount of methamphetamine, a

17   Schedule II controlled substance, in violation of Title 21,

18   United States Code, Section 846.

19       Do you understand what you're charged with?

20         THE DEFENDANT:  Yes.

21         MS. FULLERTON:  The possible penalty for that charge

22   is a term of imprisonment of not less than five years nor more

23   than 40 years in prison and a fine of up to $5 million.

24   Following any term of imprison- -- of imprisonment, there would

25   be a term of supervised release of not less than four years,

1    and there is also a $100 special assessment, and you could be

2    ordered to forfeit $9,260 in U.S. currency to the United

3    States.

4         Do you understand the possible penalties?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Having heard the charges and the possible

7    penalties again, is it still your intent to plead guilty?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  I have in front of me a Petition to Enter

10   a Plea of Guilty and a plea agreement.

11        Do you have those in front of you?

12             THE DEFENDANT:  Yes.

13             THE COURT:  It appears that you signed the petition

14   on July 17th and the plea agreement yesterday; is that right?

15             THE DEFENDANT:  Yes.

16             THE COURT:  When you went over these documents, was

17   your attorney with you?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Going to the petition with all the

20   questions and answers in it, did you read the questions?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Did you answer them aloud?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Were the answers you stated out loud

25   true?

1            THE DEFENDANT:  Yes.

2            THE COURT:  Did Mr. Braaten write down your answers?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Were the answers he wrote down correct?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And after going through the document, did

7 you sign it?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Going to the plea agreement, did you read

10 the plea agreement?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Did Mr. Braaten explain it to you?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Were there any questions you had about it

15 that he was not able to answer?

16            THE DEFENDANT:  No.

17            THE COURT:  And after going through the plea

18 agreement, did you sign it?

19            THE DEFENDANT:  Yes.

20            THE COURT:  When you went over the petition in July,

21 were you under the influence of drugs or alcohol or having any

22 difficulty thinking?

23            THE DEFENDANT:  No.

24            THE COURT:  When you went over the plea agreement,

25 were you under the influence of anything or having difficulty

1    thinking?

2              THE DEFENDANT:  No.

3              THE COURT:  Are you having difficulty today in any

4    way?

5              THE DEFENDANT:  No.

6              THE COURT:  Has anybody threatened you in any way to

7    get you to plead guilty?

8              THE DEFENDANT:  No.

9              THE COURT:  Has anybody promised you anything other

10   than the promises in the plea agreement itself to get you to

11   plead guilty?

12             THE DEFENDANT:  No.

13             THE COURT:  Do you understand, sir, that if the Court

14   accepts your plea of guilty, you will be found guilty of a

15   felony?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand you have the right to

18   plead not guilty and make the government try to prove this case

19   at trial?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand you are giving up your

22   trial rights by pleading guilty?

23             THE DEFENDANT:  Yes.

24             THE COURT:  You've been represented in this case by

25   Mr. Braaten; is that correct?

```
1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you believe that he's investigated

3    this case sufficiently so that you know what to do today?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Are you satisfied with his

6    representation?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that if you chose to go

9    to trial, you would have the right to counsel representation at

10   the trial at no cost to you?

11             THE DEFENDANT:  Yes.

12             THE COURT:  As that applies to you, Mr. Braaten would

13   be with you at the trial, he would represent your interests and

14   he would never send you a bill for that service.

15      Do you understand?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand that if you chose to go

18   to trial, you would have a jury trial?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand that at that trial you

21   would have the right to see and hear the witnesses who testify

22   against you and to have them cross-examined on your behalf?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand you would have the

25   right to call witnesses for you and if they would not come
```

1   voluntarily, you could get a court order called a subpoena to

2   make them come and testify?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Do you understand that if you chose to go

5   to trial, you could testify yourself, if you wanted to, or you

6   could remain silent at the trial?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Do you understand that if you remained

9   silent the jury would not be allowed to consider that silence

10   in deciding whether you are guilty?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And finally, sir, do you understand that

13   if you chose to go to trial, the government would not get a

14   conviction against you unless it was able to prove to every

15   single juror that you are guilty beyond a reasonable doubt?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Are you willing to give up all of your

18   trial rights and plead guilty in this case instead?

19           THE DEFENDANT:  Yes.

20           THE COURT:  With a guilty plea you will have a felony

21   record and with that felony record comes the loss of civil

22   rights.

23       Those rights include the right to vote, the right to serve

24   on a jury, the right to hold a public office, the right to

25   carry a weapon.  You can also lose federal benefits but you

 1     will lose rights.

 2          Do you understand that?

 3               THE DEFENDANT:  Yes.

 4               THE COURT:  And knowing that you will lose civil

 5     rights, are you willing to plead guilty?

 6               THE DEFENDANT:  Yes.

 7               THE COURT:  You're looking at a sentence in this case

 8     of a minimum of five years and up to 40 years in prison, a

 9     possible fine of up to $5 million could be imposed in addition

10     to any term of imprisonment, supervised release of at least

11     four years and up to a lifetime, and a $100 mandatory special

12     assessment.

13          Is that your understanding of what you're facing?

14               THE DEFENDANT:  Yes.

15               THE COURT:  Has Mr. Braaten explained the sentencing

16     guidelines to you?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Has he explained that those guidelines

19     provide the starting point that Judge Gerrard will look at in

20     determining what your sentence ought to be?

21               THE DEFENDANT:  Yes.

22               THE COURT:  Do you understand that Judge Gerrard will

23     consider all of your relevant conduct in determining your

24     sentence?

25               THE DEFENDANT:  Yes.

1          THE COURT:  For example, he's going to consider such

2     things as how much drugs were involved, whether guns were

3     involved in the distribution of drugs, whether you played a

4     leadership or managerial role in drug distribution, whether you

5     have a criminal history and the extent of that history, those

6     types of things.

7          Do you understand that?

8               THE DEFENDANT:  Yes.

9          THE COURT:  And once Judge Gerrard considers all of

10    your relevant conduct and makes his findings, do you understand

11    that he can sentence you within the guidelines that you've

12    discussed with your attorney, but he doesn't have to?  He can

13    go above or below those guidelines based upon his findings.

14              THE DEFENDANT:  Yes.

15              THE COURT:  Do you understand?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Then once Judge Gerrard determines how

18    much time you will spend in prison, do you understand you will

19    have to serve all of that sentence, and the most you can get

20    off of it is 54 days per year for good time served, and that's

21    only if you can earn that good time?

22         Do you understand?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Now, after you serve your time in prison,

25    you will be placed on supervised release for at least four

1    years and perhaps for the rest of your life.  I need to make

2    sure you understand what that means.

3         At the time of your sentencing, Judge Gerrard is going to

4    include a list of rules in the sentencing order that you have

5    to follow for at least four years after you get out of jail.

6    Those rules are called conditions of release.

7         Do you understand?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you understand that if you violate

10   those rules, you can be brought back to court and sent back to

11   jail?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And do you understand that if you violate

14   those rules by committing another crime, your penalty or

15   sentence on that separate crime could be greater than it

16   otherwise would have been merely because you were still serving

17   the sentence in this case when you committed the next crime?

18        Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  You will be required to pay a $100

21   mandatory special assessment.

22        Were you aware of that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  You have a plea agreement with the

25   government which outlines your agreement regarding what should

1    happen at the time of sentencing.

2        Do you understand that this agreement is between you and

3    the government and is not binding on Judge Gerrard?

4            THE DEFENDANT:  Yes.

5            THE COURT:  At this time I'm going to have

6    Ms. Fullerton explain the key points of it to you aloud.

7    Please listen while she does that.

8        Ms. Fullerton.

9            MS. FULLERTON:  Yes, Your Honor.

10       In substance the plea agreement is for Mr. Bornemeier to

11   plead guilty to Count I of the indictment and he will also

12   admit the forfeiture allegation in the indictment.

13       The parties agree that the property to be forfeited is

14   $9,260 in U.S. currency.

15       In exchange for that guilty plea, the government agrees to

16   move to dismiss the information alleging a prior conviction

17   under 21, U.S. Code, Section 851, which is filing number 9,

18   prior to pronouncement of sentence and Counts II and III at the

19   time of sentencing.

20       The government agrees that Mr. Bornemeier will not be

21   federally prosecuted in the District of Nebraska for any drug

22   trafficking and/or firearms crimes disclosed by the discovery

23   materials delivered to his attorney as of the date the

24   agreement is signed by all the parties other than the charge

25   set out in Count I of the indictment.

1     This agreement not to prosecute the defendant for specific

2     crimes does not prevent any prosecuting authority from

3     prosecuting him for any other crime or for any crime involving

4     physical injury or death.

5     The plea agreement is limited to the U.S. Attorney's

6     Office for the District of Nebraska and cannot bind any other

7     federal, state or local prosecuting, administrative or

8     regulatory authorities.

9     The parties agree that the defendant should be held

10    responsible beyond a reasonable doubt for at least 150 grams

11    but less than 500 grams of methamphetamine, actual, and at

12    least 1.5 kilograms but less than 5 kilograms of

13    methamphetamine mixture.

14    If the defendant's otherwise found to qualify for an

15    acceptance of responsibility reduction, the government will

16    move that he get the full three-level reduction.

17    The parties agree that Mr. Bornemeier possessed a firearm

18    or other dangerous weapon in connection with the offense and

19    that therefore he should get a two-level upward adjustment

20    under Sentencing Guideline Section 2D1.1(b)(1).

21    The parties agree that Mr. Bornemeier does not meet the

22    criteria for a safety valve reduction, and the parties agree

23    that if Mr. Bornemeier is determined to be a career offender,

24    his career -- his offense level would be determined pursuant to

25    Section 4B1.1(b) and he would automatically be in criminal

1    history category VI.

2        The parties agree that the defendant may not request or

3    recommend additional downward adjustments or departures and the

4    government would oppose any such requests not otherwise covered

5    in the plea agreement.

6        The parties have no agreement concerning Mr. Bornemeier's

7    criminal history category except that if he's determined to be

8    a career offender, the parties agree his criminal history

9    category would be VI.

10        The government will recommend that Mr. Bornemeier be

11    sentenced at the low end of the advisory guideline range.

12        Mr. Bornemeier knowingly and expressly waives any and all

13    rights to appeal his conviction and sentence except for a claim

14    of ineffective assistance of counsel, and he also knowingly and

15    expressly waives any and all rights to contest his conviction

16    and sentence in post-conviction proceedings, including

17    proceedings under 28, U.S. Code, Section 2255, except the right

18    to timely challenge his conviction and sentence if the Eighth

19    Circuit Court of Appeals or the U.S. Supreme Court later find

20    the charge to which he is agreeing to plead guilty fails to

21    state a crime and the right to seek post-conviction relief

22    based on ineffective assistance of counsel.

23        That in substance is the plea agreement.

24            THE COURT:  Mr. Braaten, does that fairly summarize

25    the plea agreement?

1          MR. BRAATEN:  Yes, Your Honor.

2          THE COURT:  Mr. Bornemeier, did you listen as

3    Ms. Fullerton described the plea agreement?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Does her description match your

6    understanding of your agreement with the government?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Under the terms of the plea agreement,

9    you are agreeing that you should be held responsible beyond a

10   reasonable doubt for at least 150 grams but less than 500 grams

11   of actual methamphetamine and at least 1.5 kilograms but less

12   than 5 kilograms of a methamphetamine mixture.

13      Did you agree to that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  You're -- and are you responsible for

16   those amounts?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  Okay.  You're also agreeing that you will

19   forfeit $9,260 of United States currency.  Is that correct?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And that's part of the forfeiture

22   allegation.  We'll go over that in just a moment.

23      Waiver of appeal and waiver of collateral attack.  Those

24   two provisions are provi- -- are set forth in your plea

25   agreement.  I want to make sure you understand what they mean.

1    Everything that this court does is subject to being looked

2    at by another court to make sure it was done right.   The

3    process is called an appeal and the court that looks at it is

4    the Eighth Circuit Court of Appeals.

5         Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you understand that under the terms of

8    this plea agreement, you're giving up your right to that appeal

9    process unless you are claiming that Mr. Braaten provided you

10   with ineffective assistance of counsel?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Collateral attack is different than an

13   appeal.  With a collateral attack you can challenge your

14   conviction and your sentence by claiming your constitutional

15   rights were violated.

16        Do you understand?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you understand that under the terms of

19   this plea agreement, you're giving up your right to that type

20   of proceeding as well unless you are claiming that Mr. Braaten

21   provided you with ineffective assistance of counsel or you are

22   claiming that what you're admitting to here today is not a

23   crime?

24        Do you understand?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that your waiver of

2    appeal and your waiver of collateral attack apply both to your

3    conviction and to the sentence you've not yet received?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Have you talked to your attorney about

6    your appeal rights and collateral attack rights?

7          THE DEFENDANT:  Yes.

8          THE COURT:  After having those discussions and

9    considering your options, have you decided to give up your

10   right to appeal and your right to collateral attack with the

11   exceptions listed in the plea agreement?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Has anybody made any promises to you that

14   are not in this written plea agreement?

15         THE DEFENDANT:  No.

16         THE COURT:  Do you understand that whether you plead

17   guilty or whether you're found guilty at trial, you could get

18   the same sentence?

19         THE DEFENDANT:  Yes.

20         THE COURT:  At this time then, I'm going to have

21   Ms. Fullerton explain the factual basis for the plea.  In other

22   words, the key facts that the government would present at trial

23   if the case went to trial.  Please listen.

24      Ms. Fullerton.

25         MS. FULLERTON:  Yes, Your Honor.

1    If this matter would go to trial, the government believes

2    the following information would go before the jury:

3    On December 28th of 2017, an undercover police officer and

4    a confidential informant bought 1.46 grams of suspected

5    methamphetamine from a person who will be witness number one at

6    witness number one's apartment.

7    Mr. Bornemeier was present for this transaction and had a

8    large plastic bag containing what the officer estimated to be

9    one to two ounces of prepackaged methamphetamine.  The CI told

10   the officer that Bornemeier was witness number one's source.

11   Then on January 3rd of 2018, the undercover officer and

12   the CI bought an additional 3.48 grams of methamphetamine from

13   witness number one and the officer went back and bought seven

14   grams of methamphetamine which had a purity of 98 percent from

15   witness number one.

16   On January 10th and January 17th of 2018, the officer made

17   additional purchases from witness number one in quantities of

18   4.8 grams and 6.9 grams.

19   On the last occasion, the officer offered witness number

20   one a ride home.  Witness number one told the officer to drop

21   him off in his apartment complex parking lot next to a white

22   Chevy Tahoe.

23   On February 2nd of 2018, Mr. Bornemeier was stopped in

24   that same Chevy Tahoe for a traffic offense.  As he got out of

25   the vehicle, his marijuana pipe fell on the ground.  He was

1    arrested.  He was searched incident to arrest.  Officers found

2    $9,260 in cash in his pants pockets, a digital scale with

3    residue and in his vehicle they found 232.97 grams of

4    methamphetamine which contained at least 220 grams of actual

5    methamphetamine.

6        A search warrant was then executed at Mr. Bornemeier's

7    residence.  In his room they found a loaded 9-millimeter

8    handgun and then a .22-caliber rifle was found in a kitchen

9    cabinet.

10       On February 22nd of 2018, witness number one was arrested,

11   waived his Miranda rights and said that Bornemeier was his main

12   methamphetamine source before Bornemeier was arrested on

13   February 2nd.  Witness number one said he had seen Bornemeier

14   with up to two pounds at a time.  He said he was getting

15   ounce -- up to ounce quantities from Bornemeier and knew that

16   Bornemeier kept guns.  He said Bornemeier's source was in

17   Omaha.

18       Witness number one then signed a cooperation agreement.

19   He told officers he dealt with Mr. Bornemeier from September of

20   2017 until Mr. Bornemeier was arrested in February of 2018.

21   During that time witness number one obtained one-and-a-half

22   ounces of methamphetamine from Mr. Bornemeier on 30 to 40

23   occasions.  He also acted as a middleman between Mr. Bornemeier

24   and customers, usually getting a quarter ounce from

25   Mr. Bornemeier for that purpose three to four times a day.  He

1    got four ounces on at least two occasions.

2         He said Mr. Bornemeier was also selling one-sixteenth

3    ounce to one-eighth ounce quantities to other persons.  Witness

4    number one said he saw two cereal boxes full of methamphetamine

5    on one occasion and knew that Mr. Bornemeier also kept cash in

6    the cereal boxes.

7         Witness number one said Mr. Bornemeier also had various

8    guns and sometimes carried guns while he was doing deals.

9         All this occurred in Nebraska.

10         THE COURT:  Mr. Braaten, do you agree if this case

11    went to trial, that evidence would go before a jury?

12         MR. BRAATEN:  Yes, Your Honor.

13         THE COURT:  Mr. Bornemeier, did you listen as

14    Ms. Fullerton described the evidence against you?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Is what she said the truth?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Between July of 2017 and February 2nd of

19    2018, were you here in Nebraska?

20         THE DEFENDANT:  Yes.

21         THE COURT:  While in Nebraska were you buying and

22    selling methamphetamine?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Did you do so on numerous occasions?

25         THE DEFENDANT:  Yes.

1    THE COURT:  Did you know that what you were buying

2    and selling was, in fact, methamphetamine?

3    THE DEFENDANT:  Yes.

4    THE COURT:  Do you agree that over that period of

5    time you possessed with the intent to distribute or, in fact,

6    distributed 50 grams or more of a mixture or substance

7    containing a detectable amount of methamphetamine?

8    THE DEFENDANT:  Yes.

9    THE COURT:  And, in fact, based upon your plea

10   agreement, you're agreeing that it was at least 150 grams but

11   less than 500 grams of actual methamphetamine and at least 1.5

12   kilograms but less than 5 kilograms of a methamphetamine

13   mixture; is that correct?

14   THE DEFENDANT:  Yes.

15   THE COURT:  And did you do this conduct while in

16   Nebraska?

17   THE DEFENDANT:  Yes.

18   THE COURT:  On February 2nd did you have contact with

19   law enforcement?

20   THE DEFENDANT:  Yes.

21   THE COURT:  While you were in contact with law

22   enforcement that day, was your person searched?

23   THE DEFENDANT:  Yes.

24   THE COURT:  Did the officers find $9,260 on you?

25   THE DEFENDANT:  Yeah.

1          THE COURT:  And is that money the proceeds or money

2    being used for your illegal drug activity?

3          THE DEFENDANT:  Yes.

4          THE COURT:  As such, do you agree that that should be

5    forfeited to the United States Government?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Any additional questions, Ms. Fullerton?

8          MS. FULLERTON:  No, Your Honor.

9          THE COURT:  Mr. Braaten?

10         MR. BRAATEN:  No, Your Honor.

11         THE COURT:  Ms. Fullerton, do you believe the guilty

12   plea is knowing, intelligent and voluntary and that there is a

13   factual basis for it?

14         MS. FULLERTON:  Yes, Your Honor.

15         THE COURT:  Mr. Braaten, do you agree?

16         MR. BRAATEN:  Yes, Your Honor.

17         THE COURT:  Mr. Bornemeier, do you want this court to

18   accept your plea of guilty?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  Do you have any questions of me before I

21   proceed?

22         THE DEFENDANT:  No.

23         THE COURT:  To Count I of the indictment, which

24   alleges that between July 1 of 2017 and continuing to

25   February 2nd of 2018, in the District of Nebraska, you, along

1    with others, did buy and sell and distribute and possess with

2    the intent to distribute 50 grams or more of a mixture or

3    substance containing a detectable amount of methamphetamine,

4    what do you plead?

5                    THE DEFENDANT:  Guilty.

6                    THE COURT:  To the forfeiture allegation, do you

7    agree that the $9,260 on your person on February 2nd of 2018

8    should be forfeited to the United States Government as illegal

9    drug proceeds?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  I do find that your guilty plea is

12   knowing, intelligent and voluntary and that there is a factual

13   basis for it.  I will --  Did I ask if you had any additional

14   questions?

15                   MS. FULLERTON:  Yes, you did.

16                   THE COURT:  Okay.  And I --  I'm sorry.  I will

17   recommend to Judge Gerrard that he accept your plea of guilty.

18   I will also recommend that he accept your plea agreement.

19       He'll take up the issue of your plea agreement at the time

20   of sentencing.  We're looking at a sentencing date of

21   January 4th at 11:30 a.m.

22       Does that work for everyone?

23                   MS. FULLERTON:  Yes, Your Honor.

24                   THE COURT:  Mr. Braaten?

25                   MR. BRAATEN:  Yes, Your Honor.

1          THE COURT:  Any additional matters we need to take

2     up?

3          MS. FULLERTON:  No, Your Honor.

4          MR. BRAATEN:  No, Your Honor.

5          THE COURT:  We are in recess.

6      (Recess taken at 10:23 a.m.)

7

8                          * * * * * * *

9

10     I, Rogene S. Schroder, certify that the foregoing is a

11     correct transcription to the best of my ability from the

12     digital recording of the proceedings held in the above-entitled

13     matter.

14         */s/Rogene S. Schroder*              October 19, 2018
               Transcriber                          Date
15

16

17

18

19

20

21

22

23

24

25